1

2

3                           UNITED STATES DISTRICT COURT
                             WESTERN DISTRICT OF WASHINGTON
4                                          AT SEATTLE

5    DONALD O'NEILL,

6                            Plaintiff,              Case No. C17-1700 BHS

7              v.                                    ORDER REVERSING DECISION
                                                     TO DENY BENEFITS
8    NANCY A. BERRYHILL, Deputy
     Commissioner of Social Security for
9    Operations,

10                           Defendant.

11                              I.      BASIC DATA

12   Type of Benefits Sought:

13          ( X )   Disability Insurance

14          ( X )   Supplemental Security Income

15   Plaintiff's:

16          Sex:  Male

17          Age:  24 at the time of alleged disability onset

18   Principal Disabilities Alleged by Plaintiff:  Bipolar disorder.  AR at 76.

19   Disability Allegedly Began:  November 14, 2012

20   Principal Previous Work Experience:  Dental assistant; machinist; automobile accessories
21   installer.

22   Education Level Achieved by Plaintiff:  GED

23

# II.  PROCEDURAL HISTORY—ADMINISTRATIVE

Before ALJ:

    Date of Hearing:  November 29, 2016

    Date of Decision:  June 13, 2017

    Appears in Record at: AR 10-21

    Summary of Decision:

        The claimant has not engaged in substantial gainful activity since November 14, 2012, the application date (20 C.F.R. § 416.971, et seq.);

        The claimant has the following severe impairments:  bipolar disorder; anxiety disorder; cluster B traits; attention deficit hyperactivity disorder; cannabis abuse versus dependence; and Asperger's syndrome (20 C.F.R. § 416.920(c));

        The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926);

        After careful consideration of the entire record, the Administrative Law Judge ("ALJ") found that the claimant has the residual functional capacity to perform a full range of work at all exertional levels.  In terms of nonexertional limitations, in order to meet ordinary and reasonable employer expectations regarding attendance, production, and workplace behavior, he can understand, remember, and carry out unskilled, routine, and repetitive work that can be learned by demonstration.  He can cope with occasional work setting change and occasional interaction with supervisors.  He can work in proximity to coworkers, but not in a team or cooperative effort.  He can perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public is not precluded.

        The claimant is unable to perform any past relevant work (20 C.F.R. § 416.965);

The claimant was born on XXXX, 1988[1] and was 24 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. § 416.963);

The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964);

Transferability of job skills is not an issue in this case because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not he has transferrable job skills (20 C.F.R. § 416.968);

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)).

The claimant has not been under a disability, as defined in the Social Security Act, since November 14, 2012, the date the application was filed (20 C.F.R. § 416.920(g)).

Before Appeals Council:

Date of Decision:  September 8, 2017

Appears in Record at: AR 1-6

Summary of Decision:  Denied review.

### III.    PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon:  42 U.S.C. § 405(g)

Brief on Merits Submitted by ( X ) Plaintiff        ( X ) Commissioner

### IV.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's

denial of Social Security benefits when the ALJ's findings are based on legal error or not

---

[1] Dates of birth are redacted to the year.  *See* Fed. R. Civ. P. 5.2(a)(2); LCR 5.2(a)(1).

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V. EVALUATING DISABILITY

The claimant, Donald Patrick O'Neill ("O'Neill"), bears the burden of proving he is disabled within the meaning of the Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial

gainful activity existing in the national economy.  42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner.  *Id.*

## VI.    ISSUES ON APPEAL

Whether the ALJ properly evaluated O'Neill's symptom testimony;

Whether the ALJ properly assessed the medical evidence, including the opinions of:

1.   John Haroian, Ph.D.;

2.   Victoria McDuffee, Ph.D.;

3.   William Wilkinson, Ed.D.; and

4.   State-agency evaluators Patricia Kraft, Ph.D., and Matthew Comrie, Psy.D.;

Whether, if the ALJ committed reversible error, the matter should be remanded for an award of benefits.

# VII.   DISCUSSION

## A.   The ALJ Did Not Err in Assessing O'Neill's Symptom Testimony

The ALJ found that O'Neill's testimony concerning the intensity, persistence, and limiting effects of his symptoms was "not entirely consistent with the evidence."  AR at 15.  The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptom; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptom alleged.  *Id.*  The ALJ found that O'Neill met this step because his medically determinable impairments could reasonably be expected to cause the symptoms he alleged.  AR at 15.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "by offering specific, clear and convincing reasons for doing so.  This is not an easy requirement to meet."  *Id.*  In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for

discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ offered four reasons for rejecting O'Neill's testimony: (1) O'Neill had previously worked at substantial gainful levels, and had no significant deterioration in his condition; (2) O'Neill's testimony was not consistent with his daily activities; (3) O'Neill had not been compliant with treatment; and (4) there was a situational component to O'Neill's claims that he could not work. *Id.* at 15-17.

### 1. Prior Work History

The ALJ discounted O'Neill's testimony because O'Neill had "worked at substantial gainful levels in 2006-2007 and 2010-2011 despite his problems, and the evidence does not reveal any significant change or deterioration." *Id.* at 15 (internal citation omitted). The ALJ was entitled to discount O'Neill's testimony based on inconsistencies with his work history, but only if her position was supported by substantial evidence in the record. *See Thomas*, 278 F.3d at 958-59. It was not. O'Neill had eight different jobs in 2006-07, and four different jobs in 2010-11. *Id.* at 257-59. A claimant has not engaged in substantial gainful activity where he is unable to hold a job for a significant period of time even if he has been able to secure multiple jobs during that period. *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692-94 (9th Cir. 1999). The fact that O'Neill had jobs in the past does not establish that he is capable of keeping a job now, particularly when the record indicates he could not keep those past jobs. The ALJ's first reason for discrediting O'Neill's testimony thus fails.

### 2.      Consistency with Daily Activities

The ALJ next justified her decision to discount O'Neill's testimony by stating that the evidence indicated he was "more active and capable than he alleged." *Id.* at 17. While O'Neill claimed he was unable to function when he came down from a manic episode, he testified at the hearing that he had been caring for his injured roommate for the previous five-plus months, doing laundry, dishes, and other chores. *Id.* at 39-42.

The ALJ's position is a rational interpretation of the evidence, and thus must be upheld. *Thomas*, 278 F.3d at 954. This is not to say that O'Neill could perform work activities because the caretaking duties he performed are easily transferable to a work environment, but simply that the ALJ could reasonably conclude his testimony regarding the severity of his symptoms was inconsistent with the caretaking duties he was admittedly performing. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). The ALJ did not err in discounting O'Neill's testimony on this basis.

### 3.      Compliance with Treatment

The ALJ's third reason for discounting O'Neill's testimony was that he was not entirely compliant with treatment. AR at 16. The ALJ pointed to several places in the record in which O'Neill reported that his medications were helping his symptoms. *Id.* at 16, 386, 427, 554. However, O'Neill testified that he had stopped taking his medications the year prior to the hearing. *Id.* at 42.

"[A]n unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can constitute a sufficient reason for discrediting a

claimant's symptom testimony. *Fair*, 885 F.2d at 603. Where the claimant provides a reason for noncompliance with treatment, however, the ALJ cannot disregard the claimant's testimony without addressing why the reason given is not believable. *See Trevizo*, 871 F.3d at 680.

While the ALJ properly noted that O'Neill did not comply with his treatment, she failed to adequately address his reasons for noncompliance. O'Neill testified that he stopped taking his medications because they "made [him] feel like a zombie;" he "couldn't think correctly;" and he slept for 18 hours a day. AR at 42, 48. He also noted that he stopped attending mental health counseling because he moved, lost his driver's license, and had no way to get to his treatment provider. *Id.* at 42-43.

The ALJ responded to O'Neill's claims by stating that "[a]lthough [O'Neill] has alleged various side effects from the use of medication, namely drowsiness, lightheadedness, and nausea, the evidence does not corroborate those allegations. After he went on medication and his regimen was adjusted, he reported that his symptoms were largely controlled, with no indication of significant side effects." *Id.* at 16. But the record indicates O'Neill was still experiencing grogginess due to his medication in June 2015. *Id.* at 529. It also indicates a number of other side effects that the ALJ did not discuss. O'Neill reported "3D vision effects" at one point, urinating more frequently, and significant increase in appetite. *Id.* at 411, 414. He reported having tremors and dry mouth due to the lithium he was taking. *Id.* at 526-27. The ALJ failed to address any of

these side effects as justifications for O'Neill's failure to comply with treatment, and thus could not discredit O'Neill's testimony on that basis.

Moreover, an ALJ must be careful relying on a plaintiff's failure to comply with mental health treatment, as it is "'a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). Courts in this circuit have noted on multiple occasions that noncompliance with treatment is consistent with a diagnosis of bipolar disorder. *Winter v. Berryhill*, 711 F. App'x 847, 851 (9th Cir. 2017) (finding bipolar claimant's noncompliance with treatment did not undermine her claimed level of disability, "as noncompliance with treatment by individuals with bipolar disorder is consistent with their diagnosis"); *see also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012) (stating that claimant's difficulty following through with treatment was "entirely consistent" with her impairments from bipolar disorder, depression, anxiety, and agoraphobia).

### 4. Situational Component

The ALJ lastly discounted O'Neill's testimony because she found a situational component to his claimed inability to work. O'Neill previously worked for his father, but testified that he did not want to continue doing so because he thought that it made for an unhealthy father-son relationship, although he also mentioned that his father did not have any sustainable work. AR at 53. Elsewhere, O'Neill reported that he could work with

his father but "is sure this is not exactly the type of work he would like to do for a career." *Id.* at 426. On another occasion, O'Neill told one of his healthcare providers that he quit a warehouse job because he "felt he was too smart for the job and was very bored." *Id.* at 417.

In weighing the veracity of O'Neill's testimony, the ALJ was entitled to look at O'Neill's motivation and non-disability-related reasons for not working. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998). A claimant's decision to leave work for reasons unrelated to a claimed disability may be a clear and convincing reason to find a claimant's testimony unreliable. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001); *see also Harrelson v. Astrue*, 273 F. App'x 632, 634 (9th Cir. 2008) (affirming ALJ's decision to discredit plaintiff's testimony where, among other things, plaintiff "quit work for religious reasons rather than for any physical or mental impairment"). The ALJ provided a clear and convincing reason for discrediting O'Neill's testimony because he left (or declined to pursue) at least two jobs for non-disability-related reasons.

Although not all of the ALJ's reasons for discounting O'Neill's testimony were sufficient, her decision must be upheld. "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Batson*, 359 F.3d at 1196 (citing *Tackett*, 180 F.3d at 1098). The ALJ was entitled to discredit O'Neill's testimony based on inconsistencies between his daily activities and his claimed limitations, and his decision to leave or not pursue two jobs for non-disability-related reasons.

**B.      The ALJ Erred in Evaluating the Medical Evidence**

O'Neill next contends that the ALJ erred in weighing the opinions of three examining psychologists and two state-agency evaluators.  Where the ALJ rejects the opinion of an examining doctor, even if it is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting the opinion.  *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042).  The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick*, 157 F.3d at 725 (citing *Magallanes*, 881 F.2d at 751).  The court may also draw "specific and legitimate inferences from the ALJ's opinion."  *Magallanes*, 881 F.2d at 755.

Before addressing the specific opinions at issue, the Court briefly notes that the ALJ adequately explained her decision to disregard O'Neill's GAF[2] scores.  She explained that "GAF scores tend to be snapshot assessments and should not be interpreted as a permanent description of functioning."  AR at 19.  GAF scores can vary widely, and provide little detail as to the patient's ability to perform work activities; "expressing a GAF score of, say, 30 to 50 is similar to writing words to the effect that

---

[2] GAF, or "Global Assessment of Functioning" is a numeric scale from 0 to 100 that was intended to reflect "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness."  *Golden v. Shulkin*, --- Vet. App. ---, 2018 WL 1036923, at *3 (Vet. App. Feb. 23, 2018).

'the patient is disabled.'" *Id.* This was a specific and legitimate reason to discount O'Neill's GAF scores.

The Court now turns to the ALJ's treatment of the medical opinions at issue.

### 1. Dr. Haroian

Dr. Haroian examined O'Neill on November 14, 2012. AR at 370. He conducted a clinical interview and mental status examination. *Id.* at 370-71, 373-79. Dr. Haroian diagnosed O'Neill with bipolar II disorder, and cluster B traits. *Id.* at 371. Dr. Haroian reported that O'Neill had problems with attention, depression, anxiety, and "hypomanic behavior, such as decreased need for sleep, doing things out of character during those periods." *Id.* at 371. O'Neill had moderate limitations in several areas, and a marked limitation in his ability to "[c]omplete a normal work day and work week without interruptions from psychologically based symptoms." *Id.* at 372.

The ALJ assigned little weight to Dr. Haroian's opinion that O'Neill was markedly limited in his ability to complete a normal work day and work week without interruptions due to psychological symptoms. *Id.* at 17. The ALJ reasoned that Dr. Haroian's opinion: (a) was inconsistent with O'Neill's "longitudinal mental health treatment history and performance on mental status examinations;" (b) was internally inconsistent; and (c) relied in part on O'Neill's self-report, which the ALJ found unreliable. *Id.* at 18-19.

### a.    Inconsistency with Mental Health History

The record does not support the ALJ's first reason for rejecting Dr. Haroian's opinion.  The ALJ claimed that O'Neill "worked at substantial gainful levels in 2006-2007 and 2010-2011 despite his problems," *id.* at 15, but, as discussed above, that is not supported by substantial evidence.  *See supra* at Part VII.A.1.

The ALJ further claimed that O'Neill's symptoms were largely controlled by medications.  AR at 18.  Viewing the record as a whole, this claim is not supported by substantial evidence.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (stating that treatment records "must be 'read in context of the overall diagnostic picture' the provider draws") (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).  O'Neill told his providers at various times that his medications helped his symptoms.  AR at 386, 427, 554.  But at the same time he continued to experience severe depression, hopelessness, anger, and sleep disturbances. *See id.* at 386, 404, 408, 417, 423, 529, 539, 544, 558.  The ALJ's statement that O'Neill was "stable and doing relatively well in June 2015" is an inaccurate snapshot of his overall mental health picture.  In January 2015, O'Neill reported that he was charged with domestic assault after strangling his neighbor.  *Id.* at 529.  In May 2015, O'Neill was hospitalized after attempting suicide.  *Id.* at 474.  In June 2015, O'Neill reported that he experienced tremors and dry mouth from one of his medications, had been kicked out of his girlfriend's cousin's house, and had abnormal sleep patterns (sleeping a few hours at night and taking a six hour nap during the day).  *Id.* at 527.  In September 2015, O'Neill

continued to report significant anger and stress management issues ("when he becomes upset, his whole body shakes, he finds it hard to breathe, his chest hurts, and his thoughts race"), and continued to have significant sleep issues despite reporting that he was taking his medications. *Id.* at 526. Thus, the ALJ's conclusion that O'Neill's symptoms were adequately controlled by medications is not supported by substantial evidence in the record, and this was not a valid basis to discount Dr. Haroian's opinions.

### b.   Internal Inconsistency

The ALJ's second reason for discrediting Dr. Haroian's opinion also fails. The ALJ explained her reasoning by noting that Dr. Haroian found O'Neill's abstract thought "concrete and literal," but also found him "oriented, calm, and engaged with good eye contact, normal speech, and no cognitive deficits." AR at 18. There is no inconsistency between being oriented, calm, engaged, and having normal speech, and being limited to concrete and literal thought. The only possible inconsistency is between having no cognitive deficits and being limited to concreate and literal thought, but it is not clear that these two findings are in fact inconsistent. By failing to explain what she perceived to be inconsistent, the ALJ failed to give a specific and legitimate reason for discrediting Dr. Haroian's opinions.

Furthermore, to reach the conclusion that Dr. Haroian's opinion was internally inconsistent, the ALJ had to insert her own interpretation of his test results, as Dr. Haroian did not state in his report that O'Neill had no cognitive deficits. *See id.* at 370-74. "Because ALJs are as a rule not doctors, 'courts have regularly warned ALJs not to

attempt to interpret test results or other raw medical data.'" *Mkrtchyan v. Colvin*, No. C14-1209JLR, 2015 WL 2131222, at *6 (W.D. Wash. May 5, 2015) (quoting *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 796 (E.D. Wis. 2004)).

The record includes Dr. Haroian's test results on the mini mental status exam he performed, which suggested O'Neill likely had no cognitive impairments, as well as O'Neill's results on the Trail Making Tests Part A and B, which suggested he was moderately to severely impaired. *Id.* at 375, 377. Dr. Haroian, as the medical professional, was in the best position to interpret these results and resolve any discrepancies, not the ALJ. If the ALJ had doubts about interpretation of these results, then she needed to obtain an opinion from a medical expert to address them. *See* Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-4-14 & I-2-5-34, *available at* https://www.ssa.gov/OP_Home/hallex/hallex.html.[3] The ALJ's claim that Dr. Haroian's opinion was internally inconsistent was thus not a specific and legitimate reason to discredit his opinion.

### c. Reliance on O'Neill's Self-Reports

The ALJ also erred in rejecting Dr. Haroian's opinion as based in part on O'Neill's self-report. An ALJ may justifiably discount a treatment provider's opinions if they "are based 'to a large extent' on an applicant's self-reports and not on clinical

---

[3] HALLEX "is strictly an internal Agency manual, with no binding legal effect on the Administration or [the] court." *Clark v. Astrue*, 529 F.3d 1211, 1216 (9th Cir. 2008) (citing *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000)). As an agency manual, it is nonetheless "'entitled to respect' under *Skidmore v. Swift & Co.*, [323 U.S. 134] (1944), to the extent that it has the 'power to persuade.'" *Clark*, 529 F.3d at 1216 (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)).

evidence, and the ALJ finds the applicant not credible." *Ghanim*, 763 F.3d at 1162 (*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)); *see Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

The problem with the ALJ's reasoning here is that Dr. Haroian based his opinions on his clinical observations and tests, not just O'Neill's self-reports. AR at 370-71, 373-79. Clinical interviews and mental status examinations, both of which Dr. Haroian performed, "are objective measures and cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Furthermore, psychiatric evaluations "will always depend in part on the patient's self-report" because "unlike a broken arm, a mind cannot be x-rayed." *Id.* (internal quotation marks omitted) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. Absent a more specific explanation establishing that Dr. Haroian's opinion was so heavily based on O'Neill's subjective complaints, a fact not supported by the record, the ALJ could not discount Dr. Haroian's opinion on this basis. The ALJ thus erred in discounting Dr. Haroian's opinion.

### 2. Dr. McDuffee

Dr. McDuffee examined O'Neill on October 15, 2013.  AR at 359.  She conducted a clinical interview and mental status exam, and administered the Trail Marking Part A and B, and Minnesota Multiphasic Personality Inventory 2 RF tests.  *Id.* at 359-60, 363-64.  Dr. McDuffee diagnosed O'Neill with attention deficit hyperactivity disorder and Asperger's disorder.  *Id.* at 361.  Dr. McDuffee noted marked limitations in seven areas of basic work activity, and severe limitations in O'Neill's ability to "[m]ake simple work-related decisions;" "communicate and perform effectively in a work setting;" and "maintain appropriate behavior in a work setting."  *Id.* at 362.

The ALJ assigned little weight to Dr. McDuffee's opinion that O'Neill had marked to severe functional social and cognitive deficits with a GAF score of 50.  AR at 17.  The ALJ relied on the same reasons for rejecting Dr. McDuffee's opinion as she had for Dr. Haroian (inconsistency with O'Neill's mental health history, reliance on O'Neill's self-reports), except that she did not note any internal inconsistency in Dr. McDuffee's report.  *Id.* at 18-19.   Those reasons fail in regard to Dr. McDuffee's opinion for the same reasons they fail in regard to Dr. Haroian's opinion.  *See supra* Part VII.B.1.a., .c.

### 3. Dr. Wilkinson

Dr. Wilkinson examined O'Neill on October 26, 2015.  AR at 465.  Dr. Wilkinson performed a clinical interview and mental status exam.  *Id.* at 465-66, 469-70.  He diagnosed O'Neill with bipolar I disorder and posttraumatic stress disorder.  *Id.* at 467.  Dr. Wilkinson noted moderate to marked limitations in O'Neill's ability to "[p]erform

activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision;" "[c]ommunicate and perform effectively in a work setting;" "[c]omplete a normal work day and work week without interruptions from psychologically based symptoms;" and maintain appropriate behavior in a work setting." *Id.* at 468.

The ALJ assigned little weight to Dr. Wilkinson's opinions. *Id.* at 18-19. Once again, the ALJ reasoned that Dr. Wilkinson's opinion was inconsistent with O'Neill's longitudinal mental health history, and relied on O'Neill's discredited self-reports. *Id.* These reasons fail with respect to Dr. Wilkinson for the same reasons they failed with respect to Drs. Haroian and McDuffee. *See supra* Part VII.B.1.a., c.

However, the ALJ provided an additional reason for rejecting Dr. Wilkinson's opinion that is sufficiently specific and legitimate: Dr. Wilkinson opined that O'Neill's impairments would only last for six to nine months with available treatment. *Id.* at 18, 468. As such, O'Neill's impairments would not satisfy the 12-month duration requirement. *See* 20 C.F.R. § 404.1509. Dr. Wilkinson's opinion had little probative value as a result, and the ALJ therefore did not err in discrediting Dr. Wilkinson's opinion on this basis. *See, e.g.*, *Tappon v. Carolyn*, No. , 2014 WL 989253, at *5 (W.D. Wash. Mar. 13, 2014) (finding no error in ALJ's decision to discount medical opinion in which doctor opined that plaintiff's limitations would last a maximum of six months, short of the 12-month durational requirement).

### 4.    Drs. Kraft and Comrie

Because the Court finds that the ALJ erred in giving little weight to the opinions of Drs. Haroian and McDuffee, we need not reach the question of whether the ALJ erred in giving more weight to the opinions of state-agency evaluators Drs. Kraft and Comrie. As explained below, on remand, the ALJ should reassess the opinions of Drs. Kraft and Comrie in light of the reassessed opinions of Drs. Haroian and McDuffee.

### 5.    Harmful Error

The ALJ's discount of the opinions from Drs. Haroian and McDuffee was harmful error. The Court cannot consider an error harmless unless it can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). The Court is unable to conclude that the ALJ would have reached the same disability determination had he adequately evaluated the opinions of Drs. Haroian and McDuffee. Among other things, both opined that O'Neill had various limitations, and that could impact his ability to perform jobs that exist in significant numbers in the national economy. *See* AR at 362, 372.

## C.    Remand

O'Neill asks the Court to remand this matter for payment of benefits. Op. Br. at 17-18. The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*,

80 F.3d at 1290). But remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 808 F.3d 1041, 1044 (9th Cir. 2017). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded for further proceedings. *McCartey*, 298 F.3d at 1076.

The appropriate remedy here is remand for further proceedings. There are conflicting medical opinions, and evidentiary questions that exist given the ALJ's decision to discredit O'Neill's symptom testimony. The Court is not in a position to reweigh the evidence, nor can it conclude that the ALJ would be required to find O'Neill disabled after properly evaluating the opinions of Drs. Haroian and McDuffee. *See Leon*, 880 F.3d at 1046-48 (affirming the district court's decision to remand for further proceedings, rather than remand for payment of benefits, where the record reveals conflicts, ambiguities, or gaps).

On remand, the ALJ must reevaluate the opinions of Drs. Haroian and McDuffee, and conduct further proceedings as necessary to reevaluate the disability determination in light of these opinions.

# VIII.  ORDER

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 22nd day of May, 2018.

_____
BENJAMIN H. SETTLE
United States District Judge